IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

MICHAEL J.  GAROFALO,

        Plaintiff,

vs.

VILLAGE OF HAZEL CREST;
ROBERT B. DONALDSON; GARY A. JONES;
and ROBERT L. PALMER,

        Defendants.

No. 06C003674
**(CONSOLIDATED WITH 06C001372)**

## DEFENDANT, VILLAGE OF HAZEL CREST'S, ANSWER TO COUNT I OF PLAINTIFF GAROFALO'S COMPLAINT AT LAW

NOW COMES the defendant, **Village of Hazel Crest**, by and through its attorneys, NORTON, MANCINI, & WEILER, and for Answer to Count I Only of Plaintiff Garofalo's Complaint at Law, states as follows:

### Jurisdiction and Venue

1.     This action arises under the provisions of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § § 2000e-5 et seq.; 42 U.S.C. § 1981, as amended; 42 U.S.C. § 1983, as amended, and 42 U.S.C. § 1988, as amended, to redress unlawful and discriminatory practices engaged in by Defendants against Plaintiff.  Declaratory, injunctive and equitable relief are sought pursuant to 28 U.S.C. § § 2201 and 2202; 42 U.S.C. § 2000e-5(g), and 42 U.S.C. § 1988.  Costs and attorneys' fees are sought pursuant to 42 U.S.C. § 2000E-5(k); 42 U.S.C. § 1988, and Rule 54(d) of the Federal Rules of Civil Procedure.

       **ANSWER:**   Defendant admits that Plaintiff has filed this action pursuant to the statues alleged, however, Defendant denies any liability thereunder.

2. Jurisdiction is specifically conferred on this Court pursuant to 42 U.S.C. § 2000e-5(f)(3); 42 U.S.C. § 1988; 28 U.S.C. § § 1331 and 1341 (a)3. The Court's pendent jurisdiction is invoked over any and all state law claims brought as a part of this action.

>    **ANSWER:** Defendant admits the allegations in paragraph 2 of the Plaintiff's Complaint at Law.

3. Venue is proper in this District and Division under 28 U.S.C. § § 1343, 2201, and 2002, and 42 U.S.C. § 2000e-d(f)(3) in that all events complained of herein occurred within this District and Division.

>    **ANSWER:** Defendant admits the allegations in paragraph 3 of the Plaintiff's Complaint at Law.

4. The Plaintiff, Michael Garofalo, filed Charge of Discrimination No. 440-2006-01401 on January 26, 2006, alleging discrimination based on his race. Plaintiff's Charge of Discrimination is attached hereto as Exhibit 1.

>    **ANSWER:** Defendant admits the allegations in paragraph 4 of the Plaintiff's Complaint at Law.

5. The EEOC issued a Notice of Right to Sue on Charge No. 440-2006-01401 on April 11, 2006, and Plaintiff received same on or about April 13, 2006. See Exhibit 2. Plaintiff files his Complaint within ninety (90) days of receipt of the Notice of Right to Sue.

>    **ANSWER:** Defendant admits the allegations in paragraph 5 of the Plaintiff's Complaint at Law.

## Parties

6. The Plaintiff herein, Michael Garofalo (hereinafter "Garofalo") is a citizen of the United States who is domiciled in the County of Cook, State of Illinois.

**ANSWER:** Defendant admits the allegations in paragraph 6 of the Plaintiff's Complaint at Law.

7.  Garofalo's race is Caucasian.

**ANSWER:** Defendant admits the allegations in paragraph 7 of the Plaintiff's Complaint at Law.

8.  At all times relevant hereto, Garofalo was an employee of the Village of Hazel Crest. The Village of Hazel Crest hired him on November 1, 1984. At the time of the discriminatory conduct complained of herein, Garofalo held the position of Police Sergeant.

**ANSWER:** Defendant denies that there was any discriminatory conduct, but admits the other allegations in paragraph 8 of the Plaintiff's Complaint at Law.

9.  The Defendant, Village of Hazel Crest (hereinafter "Hazel Crest") is a non-home rule municipality governed by the Board of Trustees and electing a Mayor/Village President and employing a Village Manager. Hazel Crest is located in the County of Cook, State of Illinois.

**ANSWER:** Defendant denies that Hazel Crest is a non-home rule municipality, but admits all other allegations in paragraph 9 of the Plaintiff's Complaint at Law.

10.  The Defendant, Robert B. Donaldson (hereinafter "Donaldson") is a citizen of the United States domiciled in the County of Cook in the State of Illinois. At all times relevant hereto, Donaldson was mayor/Village President of Hazel Crest.

**ANSWER:** Defendant admits the allegations in paragraph 10 of the Plaintiff's Complaint at Law.

11.  Donaldson is African-American.

**ANSWER:** Defendant admits the allegations in paragraph 11 of the Plaintiff's Complaint at Law.

12.     The Defendant, Gary A. Jones, (hereinafter "Jones") is a citizen of the United States domiciled in the County of Cook, State of Illinois.  Jones was appointed Acting Chief of Police of Hazel Crest on or about April 22, 2005.

**ANSWER:**     Defendant admits the allegations in paragraph 12 of the Plaintiff's Complaint at Law.

13.     On or about June 28, 2005, Jones was appointed Chief of Police for Hazel Crest by the Hazel Crest Board of Police and Fire Commissioners.

**ANSWER:**     Defendant denies  the allegations contained in 13 of the Plaintiff's Complaint at Law.

14.     Jones' race is Caucasian.

**ANSWER:**     Defendant admits the allegations in paragraph 14 of the Plaintiff's Complaint at Law.

15.     The Defendant, Robert L. Palmer (hereinafter "Palmer"), is a citizen of the United States domiciled in the County of Cook, State of Illinois.  At all times relevant hereto, Palmer was Village Manager of Hazel Crest.

**ANSWER:**     Defendant admits the allegations in paragraph 15 of the Plaintiff's Complaint at Law.

16.     Palmer's race is Caucasian.

**ANSWER:**     Defendant admits the allegations in paragraph 16 of the Plaintiff's Complaint at Law.

### Facts Common to All Counts

17.     At all times relevant hereto, Hazel Crest employed twenty-five (25) or more full-time police officers in its Police Department.

**ANSWER:** Defendant admits the allegations in paragraph 17 of the Plaintiff's Complaint at Law.

18.     Garofalo, the Plaintiff herein, received an Associate of Arts degree in law enforcement from Southern Illinois University in Carbondale, Illinois in December 1982.

**ANSWER:** Defendant is without knowledge or information sufficient to form a belief as the truth of the allegations of paragraph 18 of Plaintiff's Complaint at Law.

19.     He also graduated from Southern Illinois University with a Bachelor of Science degree in Criminal Justice in Spring 1984.

**ANSWER:** Defendant is without knowledge or information sufficient to form a belief as to the truth of the allegations of  paragraph 19 of the Plaintiff's Complaint at Law.

20.     Garofalo also earned a Master of Science degree in Criminal Justice from Chicago State University in Chicago, IL in May 1998.

**ANSWER:** Defendant admits the allegations in paragraph 20 of the Plaintiff's Complaint at Law.

21.     Garofalo also graduated from the School of Police Staff and Command at Northwestern University in Evanston, IL in December 2004.  His grade point average was 3.85.

**ANSWER:** Defendant admits the allegations in paragraph 21 of the Plaintiff's Complaint at Law.

22.     In addition, he has successfully completed several other schools, including a two-week supervisory school at Northwestern University in March 2002.  Successful completion of the Northwestern University Supervisory School is one of the qualifications for promotion to Deputy Chief of Police in Hazel Crest.

**ANSWER:** Defendant is without knowledge or information sufficient to form a belief as to the truth of the allegations of paragraph 22 of the Plaintiff's Complaint at Law.

23.    Garofalo obtained this professional education to qualify for a management level position in the Hazel Crest Police Department, i.e. Deputy Chief of Police or Chief of Police.

**ANSWER:** Defendant is without knowledge or information sufficient to form a belief as to the truth of the allegations of paragraph 23 of the Plaintiff's Complaint at Law.

24.    The educational qualifications obtained by Garofalo are part of the requirements for the position of Deputy Chief of Police.

**ANSWER:** Defendant denies the allegations in paragraph 24 of the Plaintiff's Complaint at Law.

25.    Garofalo also served on the South Suburban Emergency Response Team, a regional SWAT team. This team is staffed by forty (40) police officers from seventeen (17) suburban police departments.

**ANSWER:** Defendant admits the allegations in paragraph 25 of the Plaintiff's Complaint at Law.

26.    Garofalo was promoted to Team Leader and then to Team Coordinator. He was still serving has a patrol officer in Hazel Crest when he was promoted to Team Coordinator, an unprecedented occurrence.

**ANSWER:** Defendant is without knowledge or information sufficient to form a belief as to the truth of the allegations of paragraph 26 in the Plaintiff's Complaint at Law.

27.     As Team Coordinator, Garofalo was responsible for planning, organizing,

calling out the team, and assisting the Team Commander with budgeting.

> **ANSWER:**     Defendant is without knowledge or information sufficient to form a
> belief as to the truth of the allegations of paragraph 27 of the Plaintiff's
> Complaint at Law.

28.     Garofalo served on the team for more than ten (10) years, including two (2)

years as Team Leader and five (5) years as Team Coordinator.

> **ANSWER:**     Defendant is without knowledge or information to form a belief as to
> the truth of the allegations of paragraph 28 of the Plaintiff's Complaint
> at Law.

29.     Garofalo had a total of seven (7) years of experience in supervisor positions on

the South Suburban Emergency Response Team.

> **ANSWER:**     Defendant is without knowledge or information to form a belief as to
> the truth of the allegations of paragraph 29 of the Plaintiff's Complaint
> at Law.

30.     Garofalo was promoted to Police Sergeant in Hazel Crest in October 2001.  At

the time of his non-selection for the position of Deputy Chief of Police, Garofalo had three

years and nine months of supervisory experience on the Hazel Crest police department.

> **ANSWER:**     Defendant admits the allegations in paragraph 30 of the Plaintiff's
> Complaint at Law.

31.     At all times relevant hereto, Garofalo's performance met or exceeded the

legitimate expectations of the Village of Hazel Crest.  He consistently received positive

performance reviews from his superiors.

> **ANSWER:**     Defendant admits that Garofalo's performance met expectations but
> denies the remaining allegations in paragraph 31 of the Plaintiff's
> Complaint at Law.

32.     At all times relevant hereto, the Police Department of Hazel Crest is supervised by a Chief of Police, two (2) Deputy Chiefs of Police and Sergeants of Police.

**ANSWER:**    Defendant admits the allegations in paragraph 32 of the Plaintiff's Complaint at Law.

33.     At all times relevant hereto, the Mayor/President of Hazel Crest had no lawful authority to select, appoint, approve, or confirm the selection of Deputy Chiefs of Police for Hazel Crest.

**ANSWER:**    Defendant admits the allegations in paragraph 33 of the Plaintiff's Complaint at Law.

34.     The Illinois Municipal Code, at 65 ILCS 5/10-2.1-4, states, in relevant part, that, where a non-home rule municipality of 130,000 or fewer inhabitants with twenty-five (25) or more full time police officers, provides through its council or board of trustees and by ordinance for the position of deputy chiefs of police, the chief of police shall appoint the deputy chiefs of police.

**ANSWER:**    Defendant admits the allegations in paragraph 34 of the Plaintiff's Complaint at Law.

35.     The Illinois Municipal Code further provides that the deputy chief may be appointed from any rank of sworn, fill time officers from the municipality's police department, but must have at least five (5) years of full-time service as a police officer in that department.

**ANSWER:**    Defendant admits the allegations in paragraph 35 of the Plaintiff's Complaint at Law.

36.    The Illinois Municipal Code, at 65 ILCS 5/3.1-35-10, provides that, where a municipality has an employment manual, the provisions of that manual, rather than the Municipal Code, will govern employment.

> **ANSWER:**    Defendant denies the allegations in paragraph 36 of the Plaintiff's Complaint at Law.

37.    Chapter 1, Section B, 1.0 of the Village of Hazel Crest Employee Personnel Manual states, in relevant part, that the purpose of the manual is to set forth the rules and regulations of employment with the Village of Hazel Crest. The handbook further states that the personnel policies included in the manual are designed to be equitable to all Village employees.

> **ANSWER:**    Defendant admits the allegations in paragraph 37 of the Plaintiff's Complaint at Law.

38.    Chapter 1, Section A, 1.0 of the said Employee Personnel Manual, states, in relevant part, that the Village President and the Village Board of Trustees have the authority and responsibility to establish all Village policies, including personnel polices.

> **ANSWER:**    Defendant admits the allegations in paragraph 38 of the Plaintiff's Complaint at Law.

39.    The Village Manager for the Village of Hazel Crest and the Village of Department Heads are given the authority from the Village Board to carry out the Village Board's prescribed policies and to address matters affecting the Village government, including carrying out operations in the manner considered to be in the best interest of the Village.

**ANSWER:** Defendant admits the allegations in paragraph 39 of the Plaintiff's Complaint at Law.

40.     Chapter 1, Section A., 2.0 of the aforesaid Manual further provides that in the event that a conflict exists between policies set forth in this manual and the rules and regulations of the Board of Fire and Police Commissioners, the applicable Commission rules shall apply.

**ANSWER:** Defendant admits the allegations in paragraph 40 of Plaintiff's Complaint at Law.

41.     Chapter III, Section C, 2.0 states, in relevant part, that an applicant or employee of the Village is considered for hiring and/or promotion on the basis of the qualifications requested for the available position relative to experience, training, and physical abilities (if applicable to the essential functions of the position), skills and knowledge.

**ANSWER:** Defendant admits the allegations in paragraph 41 of Plaintiff's Complaint at Law.

42.     Chapter III, Section D, 2.0 of the aforesaid manual states, in relevant part, that is it the Village's policy to prohibit discrimination with respect to all officers and employees of the Village, including, but not limited to, employees covered under the Board of Fire and Police Commission rules.

**ANSWER:** Defendant admits the allegations in paragraph 42 of Plaintiff's Complaint at Law.

43.     The Chief of Police has sole statutory authority and municipal ordinance authority to appoint an individual to the position of Deputy Chief, and the promotion process

for Board of Fire and Police regulated positions is spelled out in the statue. The promotion process for the <u>exempt</u> Deputy Chief position is spelled out in the governing rules in the Village Personnel manual.

> **ANSWER:** Defendant admits that the chief of the police has the sole statutory authority pursuant to municipal ordinance to appoint the position of deputy chief. Defendant denies the remaining allegations of paragraph 43.

44. The Hazel Crest Police Department Equal Employment Opportunity Action Plan of 2004 states, in relevant part, that is it the objective of the Department that all employees are of the highest caliber possible.

> **ANSWER:** Defendant admits the allegations in paragraph 44 of the Plaintiff's Complaint at Law.

45. At all times relevant hereto, Hazel Crest has employed a Chief of Police, with responsibility for the general supervision of the Village's Police Department, and two (2) Deputy Chiefs of Police. One Village Deputy Chief of Police is assigned as Commander of the Patrol Division. The other Village Deputy Chief of Police is assigned as Commander of the Support Services Division with responsibility, *inter alia,* for communication, records, criminal investigations, crime prevention, criminal intelligence, internal affairs and accreditation management.

> **ANSWER:** Defendant denies that the Deputy Chief for Support Services at all relevant times had the responsibility for accreditation management. Defendant admits the remaining allegations contained in paragraph 45 of the Plaintiff's Complaint at Law.

46. Accreditation Management is a principal responsibility of the Deputy Chief of Police serving as Commander of the Support Services Division. Both Village Deputy Chiefs

of Police are responsible for the supervision of sergeants of police and patrol officer. Serving directly under the Deputy Chiefs of Police are, in order of rank, sergeants of police and patrol officers.

**ANSWER:** Defendant admits that both deputy chiefs of police are responsible for the supervision of sergeants of police and patrol officers. Defendant admits that serving under the deputy chiefs of police are, in order of rank, sergeants of police and patrol officers. Defendant denies the remaining allegations in paragraph 46 of the Plaintiff's Complaint at Law.

47. Defendant Palmer authored the position description for the position of Deputy Chief of Police for Hazel Crest, setting out the minimum and desired qualifications for the position.

**ANSWER:** Defendant denies the allegations in paragraph 47 of the Plaintiff's Complaint at Law.

48. The position description for the position of Deputy Chief of Police for Hazel Crest effective on or about December 11, 2001 and in effect at all times relevant to this complaint provides that *desired minimum education and experience qualifications* for the position of Deputy Chief of Police, includes a minimum of two (2) years of experience as a police sergeant or higher, and a minimum of a bachelor's degree in law enforcement or related curriculum from an accredited college or university.

**ANSWER:** Defendant admits that the position description for deputy chief as described became effective December 11, 2001. Defendant further admits that the position description stated that the desired minimum qualifications for the position included, among other things, two years of work experience as a police sergeant or higher and that it was desirable to possess at least a bachelor's degree in law enforcement or a related curriculum from an accredited college or university. Defendant

denies all remaining allegations in paragraph 48 of the Plaintiff's Complaint at Law.

49.     The position description for Deputy Chief of Police also states that successful completion of a police supervision course of instruction from an accredited Illinois police academy, and completion of a mid-level police management course, such as the F.B.I. National Academy or the Northwestern University School of Police Staff and Command are desirable qualifications for the position.

**ANSWER:**     Defendant admits the allegations in paragraph 49 of the Plaintiff's Complaint at Law.

50.     Defendant Donaldson was elected Village President/Mayor of Hazel Crest on or about April 5, 2005.

**ANSWER:**     Defendant admits the allegations in paragraph 50 of the Plaintiff's Complaint at Law.

51.     On or about April 6, 2005, Hazel Crest Police Chief Peter J. Fee (hereinafter "Fee") resigned from his position.

**ANSWER:**     Defendant admits the allegations in paragraph 51 of the Plaintiff's Complaint at Law.

52.     Shortly thereafter, Deputy Chief of Police Richard W. Lenz (hereinafter "Lenz") resigned shortly thereafter.

**ANSWER:**     Defendant admits the allegations in paragraph 52 of the Plaintiff's Complaint at Law.

53.     Prior to his resignation, Lenz's responsibilities as Deputy Chief included being Commander of the Support Services Division.

**ANSWER:** Defendant admits the allegations in paragraph 53 of the Plaintiff's Complaint at Law.

54.     Lenz' resignation created a vacancy in the position of Deputy Chief of Police with responsibility as Commander of Support Services.

**ANSWER:** Defendant admits the allegations in paragraph 54 of the Plaintiff's Complaint at Law.

55.     On or about April 22, 2005, Defendant Palmer, the Hazel Crest Village Manager, appointed Defendant Jones Acting Chief of Police. Jones had been the Deputy Chief of Police with responsibility as Commander of Support Services, thus creating a vacancy in the position of Deputy Chief of Police, Commander of Support Services.

**ANSWER:** Defendant admits the allegations in paragraph 55 of the Plaintiff's Complaint at Law.

56.     On or about April 26, 2005, Donaldson took office as Village President/Mayor.

**ANSWER:** Defendant admits the allegations in paragraph 56 of the Plaintiff's Complaint at Law.

57.     In or around early May 2005, Donaldson and Jones entered into an agreement in which Donaldson agreed to ensure that Jones would be appointed Chief of Police and Jones agreed to name an African-American as Deputy Chief of Police.

**ANSWER:** Defendant denies the allegations in paragraph 57 of the Plaintiff's Complaint at Law.

58.     Shortly after Donaldson and Jones entered into this agreement, Jones met with Donaldson and Village Trustee Jane Brown, Hazel Crest Mayor Pro Tempore, who advised Jones that, in return for being appointed Chief of Police, Jones would be expected to appoint

an African-American as Deputy Chief of Police, and would further insure representation of

African-Americans at all supervisory and command levels of the Hazel Crest Police

Department.

> **ANSWER:** Defendant denies the allegations in paragraph 58 of the Plaintiff's Complaint at Law.

59. Patrol Officer Malcolm White (hereinafter "White") is African-American.

> **ANSWER:** Defendant admits the allegations in paragraph 59 of the Plaintiff's Complaint at Law.

60. White was hired by Hazel Crest on May 27, 1998.

> **ANSWER:** Defendant admits the allegations in paragraph 60 of the Plaintiff's Complaint at Law.

61. On or about June 28, 2005, the Hazel Crest Board of Fire and Police

Commissioners appointed Jones to the position of Hazel Crest Chief of Police.

> **ANSWER:** Defendant denies the allegations in paragraph 61 of the Plaintiff's Complaint at Law.

62. Approximately two weeks later, on or about July 12, 2005, Chief of Police

Jones promoted Patrol Officer White to the position of Deputy Chief of Police with

responsibilities as Commander of the Support Services Division.

> **ANSWER:** Defendant admits the allegations in paragraph 62 of the Plaintiff's Complaint at Law.

63. Patrol Officer White did not meet the minimum qualifications for the position.

> **ANSWER:** Defendant denies the allegations in paragraph 63 of the Plaintiff's Complaint at Law.

64.     In naming Patrol Officer White Deputy Chief of Police, Jones passed over Plaintiff Garofalo, who was significantly more qualified for the position.

   **ANSWER:**     Defendant denies the allegations in paragraph 64 of the Plaintiff's Complaint at Law.

65.     At the time of his non-selection for the position of Deputy Chief of Police, Garofalo had more than twenty (20) years of experience with the Hazel Crest Police Department.

   **ANSWER:**     Defendant admits the allegations in paragraph 65 of the Plaintiff's Complaint at Law.

66.     At the time of his promotion to Deputy Police Chief, Patrol Officer White had approximately seven (7) years and one (1) month seniority as an employee of the Village of Hazel Crest.

   **ANSWER:**     Defendant admits the allegations in paragraph 66 of the Plaintiff's Complaint at Law.

67.     At the time of his non-selection for the position of Deputy Chief of Police, Garofalo had served in a supervisory capacity for the Village of Hazel Crest as a Sergeant of Police for nearly four (4) years, satisfying the Village's desired minimum experience qualifications for the position of Deputy Chief of Police.

   **ANSWER:**     Defendant admits the allegations in paragraph 67 of the Plaintiff's Complaint at Law.

68.     At the time of his promotion to the position of Deputy Chief of Police, Patrol Officer White had never held a supervisory position with the Village of Hazel Crest Police

Department and did not satisfy the Village's desired experience qualifications for the position of Deputy Chief of Police.

> **ANSWER:** Defendant admits that White had not held a supervisory position but denies the remaining allegations in paragraph 68 of the Plaintiff's Complaint at Law.

69. At the time of this non-selection for the position of Deputy Chief of Police, Garofalo had ten (10) years of supervisory experience on a regional SWAT team.

> **ANSWER:** Defendant is without knowledge or information sufficient to form a belief as the truth of the allegations in paragraph 69 of the Plaintiff's Complaint at Law.

70. At the time of his promotion to the position of Deputy Chief of Police, Officer White had never served on a regional SWAT team and had not held a supervisory position on such a team.

> **ANSWER:** Defendant admits the allegations in paragraph 70 of the Plaintiff's Complaint at Law.

71. At the time of his non-selection for the position of Deputy Chief of Police, Garofalo held a Bachelor of Science degree in Criminal Justice from Southern Illinois University, and a Master of Science degree in Criminal Justice from Chicago State University. Both academic institutions are accredited by the State of Illinois.

> **ANSWER:** Defendant is without knowledge or information sufficient to form a belief as the truth of the allegation that Garofalo received a degree from Southern Illinois University but admits that he received a Masters degree from Chicago State University.

72.     Thus, at the time of his non-selection for the position of Deputy Chief of Police, Garofalo met the Village's desired minimum education requirement for the position of Deputy Chief of Police.

> **ANSWER:**     Defendant admits that Garofalo met the desired minimum education requirement set out in the position description for deputy chief but denies the remaining allegations in paragraph 72 of the Plaintiff's Complaint at Law.

73.     At the time of his promotion to the position of Deputy Chief of Police, Patrol Officer White held neither a Bachelor's degree nor a Master's degree, and thus did not meet the Village's minimum desired education requirements for the position of Deputy Chief of Police.

> **ANSWER:**     Defendant admits that White did not meet the desired minimum education requirements for the position of deputy chief as set out in the position description but denies the remaining allegations in paragraph 73 of the Plaintiff's Complaint at Law.

74.     At the time of his non-selection for the position of Deputy Chief of Police, Garofalo was a graduate of the School of Police Staff and Command of Northwestern University. This academic program specifically satisfies one of the Village's special requirements for promotion to the position of Deputy Chief of Police as pertains to mid-level police management training.

> **ANSWER:**     Defendant admits the allegations in paragraph 74 of the Plaintiff's Complaint at Law.

75.     At the time of his non-selection for the position of Deputy Chief of Police, Garofalo had successfully completed several police supervisory training schools, thus

satisfying the Village's desired minimum education requirement of mid-level police
management training.

>**ANSWER:** Defendant is without knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 75 of the Plaintiff's Complaint at Law.

76. At the time of his promotion to the position of Deputy Chief of Police, Patrol
Officer White had not completed any mid-level police management training courses and had
not satisfied the Village's special requirement for the position, i.e. mid-level police
management training.

>**ANSWER:** Defendant admits that Malcolm White had no mid-level police management training at the time of his promotion to deputy chief. Defendant denies that this was a special requirement for the position of deputy chief.

77. At the time of his non-selection for the position of Deputy Chief of Police,
Garofalo held the position of Sergeant of Police, the rank immediately below the rank of
Deputy Chief of Police.

>**ANSWER:** Defendant admits the allegations in paragraph 77 of the Plaintiff's Complaint at Law.

78. At the time of his promotion for the position of Deputy Chief of Police, Patrol
Officer White held a position two levels below that of Deputy Chief of Police.

>**ANSWER:** Defendant admits the allegations in paragraph 78 of the Plaintiff's Complaint at Law.

79. When Jones promoted Patrol Officer White to the position of Deputy Chief of
Police, Donaldson stated publicly, "When we took over, I mentioned to the chief that we had
to have diversity. Now we have diversity."

**ANSWER:** Defendant admits the allegations in paragraph 79 of the Plaintiff's Complaint at Law.

80. On the same occasion, Jones said that Patrol Officer White's promotion to Deputy Chief of Police "ensures that diversity now exists at every level of the department."

**ANSWER:** Defendant admits the allegations in paragraph 80 of the Plaintiff's Complaint at Law.

81. On or about August 1, 2005, Chief of Police Jones appointed Patrick Murray (hereinafter "Murray"), who held the rank of Sergeant of Police, to the position of Accreditation Manager for the Police Department of Hazel Crest.

**ANSWER:** Defendant admits the allegations in paragraph 81 of the Plaintiff's Complaint at Law.

82. Following his appointment as Accreditation Manager, Murray retained the rank of Sergeant. At all times relevant to this complaint, the duties of Accreditation Manager were, by Village policy and past practice, a **primary** responsibility of the Deputy Chief of Police responsible as Commander of the Support Services Division.

**ANSWER:** Defendant admits that following his assignment as accreditation manager, Murray retained the rank of sergeant. Defendant denies the remaining allegations in paragraph 82 of Plaintiff's Complaint at Law.

83. Murray, who is Caucasian, met all of the requirements for the position of Deputy Chief of Police.

**ANSWER:** Defendant admits the allegations in paragraph 83 of the Plaintiff's Complaint at Law.

84. At all times relevant to this complaint, Murray carried out his professional duties as Accreditation Manager in a highly satisfactory manner.

**ANSWER:** Defendant admits the allegations in paragraph 84 of the Plaintiff's Complaint at Law.

85.    At the times that Jones promoted Patrol Officer White to the position of Deputy Chief of Police Chief of Police and thereafter, Jones recognized that Patrol Officer White was not professionally capable of carrying out the responsibilities of Deputy Chief of Police, specifically including those of Accreditation Manager for the Department.

**ANSWER:** Defendant denies the allegations in paragraph 85 of the Plaintiff's Complaint at Law.

86.    Because Patrol Officer White was unable to carry out the professional duties of Deputy Chief of Police as aforesaid, Jones continued to assign Accreditation Manager duties and responsibilities to Murray after the promotion of White as Deputy Chief of Police.

**ANSWER:** Defendant denies the allegations in paragraph 86 of the Plaintiff's Complaint at Law.

87.    On or about July 12, 2005, at the time of the promotion in question, Defendants rejected the candidacies of other Village employees who were white and who held the position of Sergeant of Police and who were qualified in all respects for the position of Deputy Chief of Police, including Murray and Mark S. Peers (hereinafter "Peers").

**ANSWER:** Defendant admits that the individuals identified were not selected for the position of deputy chief of police and that they were Caucasian and held the position of sergeant of police. Defendant denies all remaining allegations in paragraph 87 of the Plaintiff's Complaint at Law.

88.    The professional qualifications for the position of Deputy Chief of Police of Murray and Peers were substantially greater than those of White, including substantially

greater employee seniority, attainment of relevant Bachelor's level and Master's level college

degrees, and professional supervisory experience at the level of Sergeant of Police.

> **ANSWER:** Defendant denies the allegations in paragraph 88 of the Plaintiff's Complaint at Law.

89.     Defendants rejected Murray and Peers for the position of Deputy Chief of

Police because of their race, white.

> **ANSWER:** Defendant denies the allegations in paragraph 89 of the Plaintiff's Complaint at Law.

90.     On or about July 12, 2005, at the time of the promotion in question,

Defendants rejected the candidacy of still another Village employee, David A. Nelson,

(hereinafter "Nelson") for the position of Deputy Chief of Police.

> **ANSWER:** Defendant admits the allegations in paragraph 90 of the Plaintiff's Complaint at Law.

91.     Nelson, who is white, held the position of Sergeant of Police, and was

qualified in all respects for the position of Deputy Chief of Police, excepting that he had not

attended a mid-level police management training and had held the position of sergeant of

police for a period of a period of approximately 23 months at the time his candidacy was

rejected for the position of Deputy Chief of Police.  (Sergeant Nelson was initially hired on

August 16, 1991, and had over six (6) years' greater employee seniority than White.)

> **ANSWER:** Defendant denies that David A. Nelson was as qualified for the position of deputy chief as the individual selected by Chief Jones for the position.  Defendant admits all remaining allegations in paragraph 91 of the Plaintiff's Complaint at Law.

92.     Nelson's professional qualifications for the position of Deputy Chief of Police were substantially greater than those of Patrol Officer White.  These qualifications included his attainment of a Bachelor-level college degree in Criminal Justice from Loyola University, Chicago, IL.

**ANSWER:**     Defendant denies the allegations in paragraph 92 of the Plaintiff's Complaint at Law.

93.     Nelson's candidacy for the position of Deputy Chief of Police was rejected because of his race (white).

**ANSWER:**     Defendant denies the allegations in paragraph 93 of the Plaintiff's Complaint at Law.

94.     At the time of the promotion in question, the Hazel Crest Board of Fire and Police Commissioners maintained a Final Eligibility Register for the promotion of Village Patrol Officers to the rank of Sergeant of Police.  The Final Eligibility Roster was effective for the period May 3, 2004 through May 2, 2007.

**ANSWER:**     Defendant admits the allegations in paragraph 94 of the Plaintiff's Complaint at Law.

95.     Nine (9) Village patrol officers were identified by the Village on the Final Eligibility Roster.  Patrol Officer White was placed sixth of those eligible for the position of Police Sergeant.

**ANSWER:**     Defendant admits the allegations in paragraph 95 of the Plaintiff's Complaint at Law.

96.     On or about July 26, 2005, Chief of Police Jones appointed Patrol Officer Derrick Cathey (African-American) to the rank of Sergeant of Police.

**ANSWER:** Defendant admits the allegations in paragraph 96 of the Plaintiff's Complaint at Law.

97.     As a direct result of the refusal of Defendants to promote Garofalo to a position for which he was well qualified, Garofalo experienced severe stress and humiliation, requiring him to seek medical treatment.

**ANSWER:** Defendant denies the allegations in paragraph 97 of the Plaintiff's Complaint at Law.

98.     Because Defendants' conduct had rendered Garofalo's position untenable, he was forced to resign from the Hazel Crest Police Department.

**ANSWER:** Defendant denies the allegations in paragraph 98 of the Plaintiff's Complaint at Law.

99.     Garofalo sought a position as Chief of Police in another town, and was one of two finalists out of fifty-five (55) candidates for the position.  When Jones learned that Garofalo was being seriously considered for the position, he told Garofalo, "You need to take that job because there's nothing left for you at Hazel Crest."

**ANSWER:** Defendant is without knowledge or information sufficient to form a belief as to the truth of the allegation that Garofalo sought a position as Chief of Police in another town, and was one of the two finalists out of fifty-five candidates for the position.  Defendant denies the remaining allegation in paragraph 99 of the Plaintiff's Complaint at Law.

100.     In or around June, 2006, Garofalo submitted his notice of retirement to Chief of Police Jones.  In his letter notifying the Village of his retirement, Garofalo cited the discriminatory treatment to which Defendants subjected him, and his inability to continue to work in the environment created by Defendants' illegal conduct.

**ANSWER:**   Defendant admits the allegations in paragraph 100 of the Plaintiff's Complaint at Law.

101.   Jones granted Garofalo permission to retire immediately.

**ANSWER:**   Defendant admits the allegations in paragraph 101 of the Plaintiff's Complaint at Law.

102.   Because he was forced to take retirement prior to when he had planned to do so, Garofalo will lose a substantial amount of his police pension.

**ANSWER:**   Defendant denies the allegations in paragraph 102 of the Plaintiff's Complaint at Law.

103.   On or about January 13, 2006, Hazel Crest Police Officer Dennis Peters, a white employee of the Village of Hazel Crest, ranked highest on the Final Eligibility Roster for promotion to the rank of Sergeant of Police.

**ANSWER:**   Defendant admits the allegations in paragraph 103 of the Plaintiff's Complaint at Law.

104.   On or about January 13, 2006, at the time of a mandatory Hazel Crest Police Department meeting, Jones announced his intention to eliminate the CALEA Manager position, which he stated would have the benefit of eliminating the need to promote another sergeant within the department.

**ANSWER:**   Defendant admits the allegations in paragraph 104 of the Plaintiff's Complaint at Law.

105.   On February 28, 2006, Cliff Winters, an African-American, was appointed to the position of Police Officer for the Village of Hazel Crest.

**ANSWER:**   Defendant admits the allegations in paragraph 105 of the Plaintiff's Complaint at Law.

106.    On the occasion of the appointment, Defendant Donaldson, who was present, thanked Defendant Jones for keeping his promise for diversity in the (Hazel Crest) police department.

> **ANSWER:**    Defendant admits that Defendant Donaldson thanked Defendant Jones for the promotion of Cliff Winters, an African American. Defendant denies that there was any "promise" for diversity in the Hazel Crest Police Department.

## COUNT I: INTENTIONAL DISCRIMINATION BASED ON PLAINTIFF'S RACE, CAUCASIAN, IN VIOLATION OF TITLE VII OF THE CIVIL RIGHTS ACT

1-106. Plaintiff Garofalo reaffirms, realleges and restates Paragraphs 1-106 above, and incorporates them as paragraphs 1-106 of this Count I of his Complaint as if fully stated herein.

> **ANSWER:**    Defendants repeat and re-allege their answers to paragraphs 1-106 above as and for their answers to paragraphs 1-106 of Count I as though fully stated herein.

107.    At all times relevant hereto, Defendant Hazel Crest fit the definition of employer under Title VII.

> **ANSWER:**    Defendant admits the allegations in paragraph 107 of Count I of the Plaintiff's Complaint at Law.

108.    Defendant Hazel Crest knowingly and intentionally discriminated against Garofalo on the basis of his race, Caucasian, by refusing to promote him to the position of Deputy Chief of Police on or around July 12, 2005.

> **ANSWER:**    Defendant denies the allegations in paragraph 108 of Count I of the Plaintiff's Complaint at Law.

109.    Defendant Hazel Crest knowingly and intentionally promoted a significantly less qualified African-American employee to Deputy Chief of Police.

**ANSWER:**    Defendant denies the allegations in paragraph 109 of Count I of the Plaintiff's Complaint at Law.

110.    Defendant Hazel Crest's discriminatory treatment of Garofalo effectively ended his opportunities to be promoted within the Hazel Crest Police Department.

**ANSWER:**    Defendant denies the allegations in paragraph 110 of Count I of the Plaintiff's Complaint at Law.

111.    Defendant's discriminatory treatment of Garofalo caused him to lose salary and benefits he would have enjoyed as a result of the promotion to Deputy Chief of Police.

**ANSWER:**    Defendant denies the allegations in paragraph 111 of Count I of the Plaintiff's Complaint at Law.

112.    Defendant's discriminatory treatment of Plaintiff subjected him to humiliation, embarrassment and severe stress, making it impossible for him to continue working in the Hazel Crest Police Department, where he had built up a record of twenty-one (21) years of exemplary service.

**ANSWER:**    Defendant denies the allegations in paragraph 112 of Count I of the Plaintiff's Complaint at Law.

**WHEREFORE**, the Defendant denies that the Plaintiff is entitled to any sum whatsoever,  and pray for judgment in their favor and against the Plaintiff and that they further be awarded cost of suit and all other relief deemed just and appropriate by the Court.

## COUNT II: INTENTIONAL INTERFERENCE WITH PLAINTIFF'S CIVIL RIGHTS UNDER COLOR OF LAW 42 U.S.C.§ 1983

Defendant makes no answer to the allegations of Count II, because it has been dismissed by the Court.

## COUNT III: INTENTIONAL INTERFERENCE WITH PLAINTIFF'S CONTRACTUAL RELATIONSHIP OF EMPLOYMENT BASED ON PLAINTIFF'S RACE, IN VIOLATION OF 42 U.S.C.§ 1981

Defendant makes no answer to the allegations of Count III, because it has been dismissed by the Court..

## COUNT IV: CONSPIRACY TO DEPRIVE PLAINTIFF OF HIS CIVIL RIGHTS IN VIOLATION OF 42 U.S.C.§ 1985

Defendant makes no answer to the allegations of Count IV, because it has been dismissed by the Court.

## COUNT V: BREACH OF CONTRACT

Defendant makes no answer to the allegations of Count , because it has been dismissed by the Court.

## VILLAGE OF HAZEL CREST'S AFFIRMATIVE DEFENSE TO COUNT I OF GAROFALO'S COMPLAINT AT LAW

NOW COMES the Defendant, VILLAGE OF HAZEL CREST ("VILLAGE"), by and through its attorneys, NORTON MANCINI & WEILER, and for it's Affirmative Defense to Count I of Plaintiff's Complaint, states as follows:

1.      At all times alleged in plaintiff's complaint, the Village exercised reasonable care to prevent and correct any racially harassing behavior.

2.      At all times alleged in plaintiff's complaint, the plaintiff unreasonably failed to take advantage of any preventative or corrective opportunities provided by the Village to avoid harm or otherwise.

3.     Plaintiff's failure to do so precludes him from holding the Village liable for any purported racially discriminatory or harassing behavior.

**WHEREFORE**, the Defendant Village denies that the Plaintiff is entitled to any sum whatsoever, and prays for judgment in its favor and against the Plaintiff and that it further be awarded costs of suit and all other relief deemed just and appropriate by the Court.

Respectfully submitted,
Village of Hazel Crest

/s/ Suzan J. Sutherland
One of Its Attorneys

Thomas R. Weiler (ARDC No. 06184955)
Suzan J. Sutherland
NORTON MANCINI & WEILER
111 West Washington Street
Suite 835
Chicago, Illinois 60602

# CERTIFICATE OF SERVICE

I hereby certify that on **September 20, 2007**, I filed the foregoing **DEFENDANT, VILLAGE OF HAZEL CREST'S, ANSWER TO COUNT I OF PLAINTIFF GAROFALO'S COMPLAINT AT LAW** by using the CM/ECF system, which sent notification of such filings to the following attorneys of record:

**Plaintiff, Murray's, Attorney**
Richard J. Reimer
Richard J. Reimer & Associates, L.L.C.
15 Spinning Wheel Road, Suite 310
Hinsdale, IL 60521
(630)654-9547

**Plaintiff, Nelson's, Attorney**
Mitchell Kline
Law Offices of Mitchell Kline
203 N. LaSalle Street, Suite 2100
Chicago, IL 60601
(312)558-1454

**Plaintiff, Garofalo's, Attorney**
Patricia K. Rummer
Law Offices of Patricia K. Rummer
5950 E. Lincoln Avenue, Suite 300
Lisle, IL 60532
(630)852-8393

**Plaintiff, Peer's, Attorney**
Nicola S. Tancredi
Law Offices of Nicola S. Tancredi
Two North Trans Am Plaza Drive, Suite 250
Oakbrook Terrace, IL 60181
(630)530-0537

**Defendants' Co-Attorney**
John Murphey
Rosenthal, Murphey, & Coblentz
30 North LaSalle Street, Suite 1624
Chicago, IL 60602
(312)541-1070

**Plaintiff, Peer's, Co-Attorney**
Richard Lowell
Law Offices of Richard A. Lowell
1045 Burlington Avenue
Lisle, IL 60532
(630)493-9700

By:   /s/ Suzan  J. Sutherland
              Suzan  J. Sutherland

NORTON, MANCINI & WEILER
Attorneys for Defendants
111 West Washington Street, Suite 835
Chicago, IL 60602-2793
(312) 807-4999
Attorney No. 06184955