IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| MICHAEL GAROFALO, | ) | |
| | ) | No.: 06 C 3674 |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Judge Hart |
| | ) | |
| VILLAGE OF HAZEL CREST; | ) | Magistrate Judge Denlow |
| ROBERT B. DONALDSON; GARY A. | ) | |
| JONES, and ROBERT L. PALMER, | ) | JURY DEMAND |
| | ) | |
| Defendants. | ) | |

**PLAINTIFFS' RULE 59 MOTION TO RECONSIDER GRANT
OF SUMMARY JUDGMENT, DISMISSAL OF PLAINTIFFS'π CLAIMS
AND DENIAL OF PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT**

**NOW COMES** the Plaintiff in the above-captioned matter, Michael Garofalo (hereinafter "Garofalo"), by and through his attorney, and, pursuant to Fed.R.Civ.P. 59(e), moves this Honorable Court to alter the Court's grant of Defendants' motion for summary judgment and to dismiss Plaintiff's claims for summary judgment and the denial of Plaintiff's motion for summary judgment in the Court's decision entered January 31, 2011 on the grounds that the Court's decision was based upon an incorrect application of binding authority. Plaintiff Patrick Murray joins in Plaintiff Garofalo's motion to reconsider the Court's denial of Plaintiffs' Joint Motion for Summary Judgment and the Court's grant of Defendants' motion for summary judgment regarding constructive discharge. In support thereof, Plaintiffs provide this Memorandum of Law.

**Statement of Facts[1]**

---

[1] The facts set forth herein are a summary of the facts set out in the joint motion for summary judgment (at pp. 1-3) and supporting joint memorandum of law (at pp. 2-7)

1

Plaintiffs Michael Garofalo and Patrick Murray are white and were sergeants in the Hazel Crest, Illinois Police Department in July 2005 when they were passed over for promotion to the position of Deputy Chief of Police. Gary Jones, Chief of Police, promoted Malcolm White, who is black to the position. White was significantly less qualified than the three white Plaintiffs who were passed over for promotion.

In April 2005 Robert B. Donaldson, an African-American and a vigorous advocate of racial "diversity," was elected Mayor of Hazel Crest. Donaldson's express policy was to increase racial diversity in the Hazel Crest work force, including the police department. (PSOF 6, 52)[2] When Jones promoted White to Deputy Chief, Mayor Donaldson stated, "When we took over, I mentioned to the chief that we had to have diversity. Now we have diversity." Jones agreed stating, that White's promotion "ensures that diversity now exists at every level of the department." (PSOF 53) Donaldson and Jones agree "diversity" means the police department should racially reflect the makeup of Hazel Crest—a predominantly African American community.

Village Manager Robert Palmer named Gary Jones acting Chief of Police on or about April 22, 2005 and appointed Jones permanent Chief of Police on June 28, 2005. (PSOF 9) Jones, who is Caucasian, had been a Deputy Chief of police since the position was created in 2001. (PSOF 13) As Chief of Police, Gary Jones had the sole legal and statutory authority to make appointments to the position of Deputy Chief. He testified that he exercised that authority in making the decision to promote Malcolm White, bypassing the white plaintiffs. (PSOF 24, 25) Plaintiffs Murray and Garofalo met all the desired minimum qualifications and special requirements set out in the position

---

[2] The references in parentheses are citations to Plaintiffs Murray and Garofalo's Local Rule 56.1 Statement of Material Facts filed November 10, 2009 (Document 90).

2

description for Deputy Chief in effect December 11, 2001. (PSOF 10, 13, 23)

In making his decision to promote White, Jones admitted that he did not follow the procedures set forth in the Village's Personnel Manual with respect to appointing exempt personnel which call for basing appointments on merit and seniority. (PSOF 29) Jones also did not review performance evaluations or any personnel files. (PSOF 27)

Jones admitted he used race as a "consideration" when he promoted White to Deputy Chief over the four white sergeants whom Jones labeled the "conventional candidates." (PSOF 40, 41, 47) Jones justified this race-conscious consideration as his effort to carry out a Hazel Crest policy that called for recruiting and promoting minorities to reflect the racial makeup of the Village of Hazel Crest. (PSOF 42, 45) Hazel Crest's EEO Plan specifically ties the racial makeup of the police force to census statistics reflecting the racial makeup of the village of "19.5% white, 76.3% black, and 4.2% all other races." The goal of the policy is to have the police department, including supervisory staff, match those percentages. (PSOF 43, 44) Specifically, Jones took pride in the fact that where former Chief Fee only talked about getting minority representation in the department, he "made it happen." (PSOF 46)

Former employees of Hazel Crest recall Jones admitting to them that he promoted Malcolm White because Mayor Donaldson wanted a black deputy chief. Gary Gentzle, a deputy chief, testified Jones told him, "The Mayor would like someone black to be the second deputy chief…" (PSOF 38) Jones also told one of the plaintiffs, Patrick Murray, that he had to promote a black in the department to the position of deputy chief in order for him to become chief of police, because Donaldson demanded representation at all levels of the police department.

(PSOF 39, 40, 50)

Later, when Officer Derrick Cathey, an African-American, was promoted to sergeant, Gary Jones said, "Now we have diversity at every level of the police department, which we never had before." (PSOF 49) Recounting the first 100 days of his administration, Donaldson wrote, "We have started to achieve diversity in the upper ranks of the Police Department with the appointment of Malcolm White as the first African American Deputy Chief and Derrick Cathey as the first African American sergeant in the department's history." (PSOF 51) Jones testified that "diversity," as it relates to law enforcement services, to be primarily about race. (PSOF 55)

The Hazel Crest diversity policy did not contemplate matching the racial makeup of the police department to the available work force for the department, of which 39% was African-American at the time. (PSOF 67) Instead, Jones explained that in 2005, "If you have an 80% African-American population in a municipality, certainly 50% of your upper level management would not be unreasonable to be viewed by the community as representative of – we are talking two people here [the deputy chiefs]. It's hard to split – do the math on two individuals." When asked how he reached the 50% number, Jones simply responded, "Two deputy chiefs." (PSOF 66)

## ARGUMENT

**I. Denial of Plaintiffs Murray and Garofalo's motion for summary judgment was error.**

In ruling on the cross motions for summary judgment, the Court reviewed a record with uncontroverted direct evidence that Defendants promoted Malcolm White, African-American, over the white plaintiffs, including Garofalo, because of race. Defendants

4

admitted that race was a consideration in the decision to promote Malcolm White. Document 105: Def. Response to Plaintiff's Statement of Additional Facts at ¶ 1. Whether Defendants promoted White because of his race is a material issue—in fact central to the case. Defendants' admission that race was a consideration means this fact is not in dispute—compelling summary judgment for the Plaintiffs).

The Court erred in denying the Murray-Garofalo motion for summary judgment because the motion demonstrates that, given the record evidence, Defendants cannot establish an essential element of their case. As the Court noted in its opinion, a party opposing a motion for summary judgment must make a sufficient showing to establish any essential element for which the party will bear the burden of proof at trial. Celotex Corp. v. Catrett, 477 U.S. 317 Defendants have the burden of demonstrating that they had a "compelling need" to consider race in the promotion decision and that the decision was "narrowly tailored." Parents Involved in Comm. Schools v. Seattle School Dist. No. 1, 551 U.S. 701, 744 (2007); see also Alexander v. City of Milwaukee, 474 F.3d 437, 444-445 (7th Cir. 2007). Despite the fact that Defendants did not make this showing, the Court denied the motion. Here, Garofalo has shown that there is an absence of evidence to support Defendants' case. Celotex, 477 U.S. at 325, cited in the opinion. Op. at p. 9 Moreover, Defendants have not identified factual disputes that would affect the outcome of the case, a necessity if they are to forestall entry of summary judgment. Id., citing Outlaw v. Newkirk, 259 F.3d 833, 837 (7th Cir., 2007). A genuine issue of material fact exists only if there is sufficient evidence for a reasonable jury to return a verdict for the nonmoving party. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).

The Court expressly held, as Garofalo and Murray argued in their motion for summary judgment, that Jones' discretion to choose whomever he wanted for the Deputy Chief position did not include the discretion to make racially discriminatory decisions. Op. at p. 16  In so holding, the Court adopted, in part, the reasoning and authority supporting Garofalo and Murray's motion for summary judgment. If the decision to promote White was racially discriminatory, it was also race discrimination as to Garofalo. The Court also adopted the reasoning of the summary judgment motion, agreeing with Garofalo and Murray that consideration of race is only permissible when the government entity can show a compelling interest and a narrowly tailored method of achieving that compelling interest. Op. at p. 17. The Court clearly believed that the Defendants had not made any showing of a compelling need to discriminate. This finding strongly supports granting Murray and Garofalo's motion for summary judgment.

All three Plaintiffs have established that, because of their race, they were totally foreclosed from consideration for the promotion to Deputy Chief. As just one of many examples, Jones told Garofalo that he effectively had no chance to be appointed Deputy Chief because he was the "wrong color." "The central question in any employment discrimination case is whether the employer would have taken the same action had the employee been of a different race and everything else had remained the same." Tevlin v. Metro. Water Reclamation Dist. Of Greater Chicago, 237 F.Supp.2d 895, 901 (.D.Ill. 2002) citing Carson v. Bethlehem Steel Corp., 82 F.3d 157, 158 (7th Cir. 1996) (per curiam).

> II.     **The Court erred in granting defendants' combined motion for summary judgment/dismissal as to Garofalo.**

The Court erred in granting Defendants' motion for summary judgment regarding Plaintiff Garofalo for three reasons 1) the Court did not take into account that race was "a motivating factor"; 2) the Court weighed evidence and questions of credibility, and 3) the Court used a damages analysis when determining liability.

### A. The Court failed to take into account race as a motivating factor.

The Court, with no citations to the record, states "Jones provides reasons why he would have selected Murray if he had not been pressured to instead select an African-American." Op. at p. 18 Title VII was amended to explicitly authorize discrimination claims where an improper consideration was "a motivating factor" for the adverse action. Desert Palace, Inc. v. Costa, 539 U.S. 90; 123 S.Ct. 2148 (2003); Gross v. FBL Financial Services, Inc., 129 S.Ct. 2343 (2009). Even if Jones might have selected another candidate, each Plaintiff can show that race discrimination was a motivating factor in the decision to pass him over for the promotion to Deputy Chief.

In fact, Defendants insist that Jones' intention with respect to promoting Murray is a disputed factual issue, a fact recognized by the Court in denying Defendants' motion as to Murray. Doc 107 at ¶¶ 15-18. Garofalo agrees with the Defendants that this assertion by Murray is disputed.

The Court erred in "dismissing" Garofalo's failure to promote claims in Counts I, II and III. As set forth above, if there is direct evidence that race motivated the decision to select White, as the Court expressly holds, it follows that Garofalo's race, in Jones' view, eliminated him from the running for the position of Deputy Chief. And Jones' remark, which is, at a minimum, a disputed fact, is direct evidence that Garofalo's race eliminated him from consideration for the position of Deputy Chief.

### B. The Court erred in weighing evidence.

7

Credibility determinations, the weighing of evidence, and the drawing of legitimate inferences from the facts are jury functions, not those of a judge ruling on a motion for summary judgment. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 255 (1986); McCann v. Iroquois Memorial Hospital, 622 F.3d 745, 752 (7th Cir., 2010).

Here, the Court has created a hurdle for Plaintiffs that is not supported, and in fact is refuted, by binding authority. The Court explains that each Plaintiff must show that he was more qualified than the others. Op. at p. 14. However, Plaintiffs need not rely on the burden-shifting approach set forth in McDonnell Douglas Corp. v. Green, 411 U.S. 792 (1973), because they have adduced direct evidence of discrimination, the analysis is instructive here. Under McDonnell Douglas, Plaintiffs make out a *prima facie* case of discrimination by demonstrating that 1) they belong to a protected group; 2) they applied for and were qualified for the positions sought; 3) the defendant rejected them for the position, and 4) the employer granted the promotion to someone who was not in the protected group. Once the Plaintiff establishes a *prima facie* case, discrimination is presumed and the employer is required to articulate a legitimate, non-discriminatory reason for the employment action. At that point, the plaintiff must establish that the reason offered by the employer is merely a pretext for discrimination. McDonnell Douglas, 411 U.S. at 802, and Texas Dep't. of Community Affairs v. Burdine, 450 U.S. 248, 253 (1981), cited in Bell v. E.P.A., 232 F.3d 546, 549-50 (7th Cir. 2000). Seventh Circuit cases demonstrate that the standard of proof is no different in a denial of a promotion case. *See* Hasham v. California State Board of Equalization, 200 F.3d 1035, 1044 (7th Cir. 2000) Paffard v. Herman, 148 F.3d 658, 669 (7th Cir.).

Therefore, a Plaintiff's burden in a Title VII case is to demonstrate that others

*outside* the protected class, not *in* it, were treated more favorably. In <u>Troupe v. May Dep't. Stores,</u> 20 F.3d 734, 736 (7th Cir., 1993), the Seventh Circuit noted that discrimination is shown by three types of circumstantial evidence:

> The first type of evidence consists of suspicious timing, ambiguous statements oral or written, behavior toward or comments directed at other employees in the protected group, and other bits and pieces from which an inference of discriminatory intent might be drawn. This is the most common type of evidence in an intentional discrimination case, now that employers have taught their supervisory employees not to put discriminatory beliefs or attitudes into words oral or written evidence. The second type consists of evidence, whether or not rigorously statistical, that employees similarly situated to the plaintiff *other than in the characteristic (pregnancy, sex, race, or whatever) on which an employer is forbidden to base a difference in treatment* (emphasis added) received systematically better treatment, or that the plaintiff was qualified for the job in question but passed over in favor of (or replaced by) a person *not having the forbidden characteristic* (emphasis added) . . . *(citations omitted).*

Thus, <u>Troupe</u> stands for the proposition that an employee who is denied a promotion must demonstrate that similarly situated employees *not* in the protected class were promoted. Despite this authority, the Court holds that the plaintiffs must show that they were more qualified than other employees in the protected class, not outside of it. This holding is in conflict with established precedent. "Circumstantial evidence of discrimination may include "evidence that the plaintiff was qualified for the job in question but passed over in favor of a person not having the forbidden characteristic." *See, e.g.,* <u>Rudin v. Lincoln Land Comm. Coll.,</u> 420 F.3d 712, 721, citing <u>Troupe,,</u> 20 F.3d at 736.

**C.     The Court erred in applying a damages analysis to determination of liability.**

Error entered the Court's opinion when the Court conflated the issue of establishing liability with the question of apportioning damages. Relying on <u>Alexander</u>

v. City of Milwaukee, 474 F.3d at 449-451, the Court apparently concluded that plaintiffs were relying on the lost chance theory to establish liability. In fact, the lost chance theory is a doctrine for evaluating damages due to a plaintiff in a competitive promotion employment discrimination case. Doll v. Brown, 75 F.3d 1200, 1206-07 (7th Cir., 1996). In Alexander, the Seventh Circuit noted, referring to the damages phase of the trial and the awarding of compensatory damages, "As we have recognized when applying this doctrine in other discriminatory promotion cases, it [the lost chance doctrine] appropriately quantifies each plaintiffs' monetary loss when what they in fact lost was a chance to compete on fair footing, not the promotion itself." *See* Biondo v. City of Chicago, 382 F.3d 680, 688. Further evidence that the lost chance theory is applied to damages may be found in Bishop v. Gainer, 272 F.3d 1009, 1016 (7th Cir., 2001).

### III. A jury could reasonably find Plaintiffs were constructively discharged.

The authority is clear: At the summary judgment stage, Plaintiffs only need to put forth facts by which a trier of fact could reasonably conclude they were constructively discharged. Fisher v. Ill. Dept. of Corrections, 51 F.Supp.2d 883, 889 (N.D.Ill. 1999); see also Gul-E-Rana Mirza v. The Neiman Marcus Group, Inc., 2009 WL 1285890 *12, n. 16 and 17 (N.D.Ill. 2009); Temores v. SG Cowen, 289 F.Supp.2d 996, 1002-1004 (N.D.Ill. 2003). To show constructive discharge, the Plaintiffs must show: (1) the working conditions were "'so intolerable that a reasonable person would have been compelled to resign; and (2) the working conditions [were] intolerable in a discriminatory way.'" Fisher, 51 F.Supp.2d at 889 (quoting Lindale v. Tokheim Corp., 145 F.3d 953, 956 (7th Cir. 1998)). Whether the Plaintiffs meet this requirement "depends on a jury's assessment of [the Plaintiffs'] credibility…" Fisher, 51 F.Supp. at 889. Applying this

standard, Judge Posner wrote, "A person who is told repeatedly that he is not wanted, has no future, and can't count on ever getting another raise would not be acting unreasonably if he decided that to remain with this employer would necessarily be inconsistent with even a minimal sense of self-respect, and therefore intolerable." <u>Hunt v. City of Markham</u>, 219 F.3d 649, 655 (7th Cir. 2000). In light of this authority, the Court erred by concluding the Plaintiffs must show they would have eventually been fired. Instead, the Plaintiffs only need to show facts whereby a reasonable jury could conclude that staying employed at Hazel Crest would "be inconsistent with a minimal sense of self respect." The Seventh Circuit has held that is the standard by which a work place may be measured as intolerable.

In this case, the Court granted Defendants' motion for summary judgment as to Plaintiffs' constructive discharge claims. Op. at p. 19-21. In that opinion, the Court noted evidence where "Jones recommended to them that they seek employment elsewhere and that their careers would be over and they would have no opportunities at Hazel Crest." Op. at p. 20. However, the Court observed, these statements were made prior to Jones being appointed as Fee's successor; and "He qualified these statements by also saying this would occur if he was not appointed Chief." Op. at p. 20-21.

The Court should also recognize the Plaintiffs were told by Jones that one of them would be selected for the position of Deputy Chief. In fact, Jones told Murray he would be promoted to the position of Deputy Chief. However, Murray was later told by the Chief he would not be promoted because the Mayor demanded a black officer be named a Deputy Chief. After being named Chief by Donaldson, Jones told Garofalo that he

11

should seek employment elsewhere "because there is nothing left for you at this department."

There is evidence in the record to support a jury's conclusion that Mayor Donaldson, through his emissary Jones, had preconditioned promotion to Deputy Chief on that person being black. The Plaintiffs and Gary Gentzle were told as much. When they were told that they were "the wrong color" to be promoted, Plaintiffs understood their opportunities for career advancement in Hazel Crest were abolished.

Once Jones acquiesced to Donaldson's racially charged promotional scheme, it was clear the fears Jones had shared with them had arrived and were there to stay. There is evidence that Jones resented being forced by Mayor Donaldson to promote the unqualified Malcolm White. Jones went so far as to say he worked for "jigaboos" and a "nigger." These expressions of frustration demonstrate that Jones did not feel he was in charge. Meaning, the implied protection Jones may have hoped to offer if he were promoted to Chief never materialized. Jones further made clear he was not the decision maker. Meaning, the "bad place to work" that Jones worried about was being visited upon the Plaintiffs by Donaldson through Jones. In all reality, for purposes of determining who would be promoted to upper management, Donaldson functioned as the *de facto* Police Chief.

Hazel Crest also published a process and set standards for promotion. The process involved an evaluation of objective and subjective criteria. Jones never interviewed eligible officers; nor did he look at employment files. Furthermore, the Village published written qualifications for the person who would be promoted to the position of Deputy Chief.

The process and criteria were swept aside once Jones was ordered by Mayor Donaldson to promote Malcolm White. At that point, none of the Plaintiffs had an opportunity to compete for the job of Deputy Chief. What's more, Malcolm White was overwhelmingly unqualified to perform the job of Deputy Chief. Jones' capitulation to Donaldson's ill-motivated plans sent a clear message that merit and career advancement in Hazel Crest was a dead notion for the white Plaintiffs.

The Plaintiffs had tested for and been promoted to the rank of sergeant. The only rank they could be promoted to was Deputy Chief. The Plaintiffs were told directly and impliedly that they could never be promoted if they continued to work at the Hazel Crest Police Department—because of a single immutable characteristic – their race. A work place is intolerable for any reasonable workers when they are told career advancement opportunities are foreclosed because they are the "wrong color." Jones knew the Plaintiffs' "careers were over"; he told them as much. A short time after Donaldson became Mayor, the Plaintiffs knew they lacked Hazel Crest's new criteria for promotion; they were the "wrong color" under the wrong mayor with a weak police chief. Plaintiffs understand the Court's position that Jones qualified his statements by saying they would not occur if he were made Chief. However, a reasonable jury could find the Plaintiffs understood Jones could not, or would not, protect them from Donaldson's discrimination because it was Jones who participated in creating the intolerable place he had predicted would occur if Donaldson were elected.

The Plaintiffs also knew that Jones' promise of protection was hollow. Their careers were over in Hazel Crest. Perhaps the best evidence of the intolerable working conditions is that all three Plaintiffs—Murray, Garafalo, and Peers—left Hazel Crest,

accepting positions with other criminal justice agencies. In sum, Plaintiffs were told explicitly and implicitly that their careers in Hazel Crest were over.

**IV.  Conclusion**

For all the foregoing reasons, and in the interests of justice, the judgment entered by this Honorable Court on January 31, 2011 should be altered or amended as set forth herein.

**WHEREFORE,** the Plaintiffs herein, Michael Garofalo and Patrick Murray, respectfully requests that this Honorable Court alter or amend the judgment entered in this matter on January 31, 2011 as requested herein and grant such other and additional relief as is required in justice and equity.

Respectfully submitted,

/s/Patricia K. Rummer
ARDC No. 06220436
Law Offices of Patricia Rummer
5950E Lincoln Avenue, Suite 300
Lisle, IL 60532
630/852-8393

*Attorney for Plaintiff Garofalo*

/s/Keith Karlson
Richard J. Reimer & Assoc.
15 Spinning Wheel Rd., #310
Hinsdale, IL 60521
(630)654-9547

*Attorney for Plaintiff Murray*